# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHAZ O. GULLEY, | : | |
|     Plaintiff, | : | No. 3:19-cv-903 (SRU) |
| | : | |
| v. | : | |
| | : | |
| BUJNICKI, et al., | : | |
|     Defendants. | : | |
| | : | |

# INITIAL REVIEW ORDER

Chaz O. Gulley ("Gulley"), currently confined at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 principally alleging that the defendants used excessive force against him while he was confined at Northern Correctional Institution. He names thirteen defendants: Lieutenant Bujnicki, Lieutenant Blackstock, Lieutenant Josephiak, Correctional Officer Buciour, Correctional Officer Sanchez, Correctional Officer Ackerman, Nurse Kay, Nurse Lisa Fryer, Lieutenant Hollister, Administrative Remedies Coordinator Schold, Warden Nick Rodriguez, Warden Mudano, and Correctional Officer Titus. Gulley asserts a federal claim for use of excessive force and state law claims for assault/sexual assault and battery. He seeks damages from the defendants in their individual capacities. Gulley's complaint is dated May 28, 2019. It was received on June 11, 2019, and his motion to proceed *in forma pauperis* was granted on June 17, 2019.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant

who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I. <u>Allegations</u>

    A. <u>Excessive Force / Cruel and Unusual Punishment / Sexual Assault</u>

On February 4, 2019, Gulley covered his cell door window to attract the attention of the unit manager. Gulley wanted to know why he had been placed on "rec alone status" in the Security Risk Group ("SRG") unit. He felt that the status made him an outcast and put him in danger. ECF No. 1, ¶ 8.

Lieutenants Blackstock and Josephiak responded to the covered window and decided to place Gulley in in-cell restraints. *Id.*, ¶ 9. Gulley spoke calmly to Mental Health Social Worker Sarah and was respectful to all the officers. He did not understand why he was put in in-cell restraints for an issue that could have been resolved easily. *Id.*, ¶ 10.

After Gulley ignored several orders to be handcuffed, a chemical agent was deployed into

2

his cell. *Id.*, ¶ 11. He then submitted to being handcuffed. *Id.*, ¶ 12. Gulley was taken to the medical unit for decontamination and escorted to cell 102 to be placed on in-cell restraints. *Id.*, ¶ 13. While the restraints were being applied, Gulley was naked to the waist. The battery in the handheld camera ran out of power for five minutes. *Id.*, ¶ 14.

During that time, the officers and supervisors made lewd, sexual, and disrespectful remarks while Officers Titus, Buciour, and Sanchez brushed against and touched Gulley's genital area and buttocks. Although they made the touching seem accidental, Gulley believes the touching was intentional. Gulley felt violated and extremely uncomfortable. *Id.*, ¶ 15. Lieutenant Josephiak, Nurse Kay, and camera operator Officer Ackerman watched Gulley indifferently. *Id.*, ¶ 16.

When the camera came on again, everyone acted professionally. When Gulley asked to be taken to the medical unit to be checked for bruising, Nurse Kay said that she had been there the entire time and did not witness any officer assaulting Gulley. *Id.*, ¶ 17. Gulley asked Lieutenant Blackstock for a Prison Rape Elimination Act ("PREA") complaint. *Id.*, ¶ 18.

When the restraints had been applied, Lieutenant Blackstock ordered Officer Buciour to tighten the restraint on Gulley's right hand. Gulley has been taking medication since 2011 for nerve damage in his right hand. *Id.*, ¶ 9. Gulley complained to Nurse Kay. She approved the application even though there was not enough space to insert one finger between Gulley's wrist and the handcuff. *Id.*, ¶ 20. Gulley reported pain and numbness to Social Worker Sarah and showed her his right hand. She reported her observations and Gulley's complaints to the custody officers. *Id.*, ¶ 21. The restraints were loosened slightly on the second shift when Nurse Bob reported the tightness of the handcuff. *Id.*, ¶ 22.

3

The following day, Gulley was escorted to speak to the state police regarding his PREA complaint. *Id.*, ¶ 23. After speaking to the state trooper and requesting an attorney be present, the interview concluded. Gulley was returned to cell 102. He remained on in-cell restraint status. *Id.*, ¶ 24.

During the escort back to his cell, Lieutenant Bujnicki directed the officers to "lie him face down on the bunk." *Id.*, ¶ 25. Because plaintiff was wearing the in-cell restraints, he was only able to lie sideways. *Id.*, ¶ 26. Lieutenant Bujnicki issued Gulley a disciplinary report stating that he was being passive/aggressive. He stated that Gulley showed Lieutenant Bujnicki his penis and stated, "Do you want some of this?" *Id.*, ¶ 27. The disciplinary report was dismissed based on camera evidence. *Id.*, ¶ 28.

Gulley remained on in-cell restraint status until February 6, 2019, even though he was calm and compliant. *Id.*, ¶ 30. While he was on in-cell restraints, Gulley complained to Nurse Fryer and Lieutenant Hollister that the restraints were tight. When the restraints were removed, Gulley showed Nurse Fryer the severe bruising on his wrists. Nurse Fryer told Lieutenant Hollister that everything was fine. She ignored Gulley's obvious pain and bruising and did not take pictures of his wrists. *Id.*, ¶ 31.

B.      Deliberate Indifference

Warden Rodriguez and Administrative Remedies Coordinator Officer Schold were aware of Gulley's complaints before he submitted grievances on these issues. *Id.*, ¶ 32. Gulley submitted his grievances on February 27, 2019. The grievances sat in the grievance box for 2-3 weeks and then were returned to Gulley to be resubmitted. Officer Schold told Gulley that he would ensure that Gulley was deemed to have filed the grievances within the 30-day period. *Id.*,

4

¶ 33.

Warden Rodriguez delayed his response to the grievances because he was waiting for the transition to the new warden, Warden Mudano. *Id.*, ¶ 34. Warden Mudano denied Gulley's level 1 grievance on April 30, 2019 but noted that he could appeal to level 2. *Id.*, ¶ 35. Gulley submitted his level 2 grievance on May 15, 2019. As of May 28, 2019, the date of the complaint, the level 2 appeal had not been forwarded to the district administrator.

II.     Analysis

Prisoners are required to exhaust administrative remedies before filing a federal lawsuit related to prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle,* 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out . . . (so that the agency addresses the issues on the merits) . . . [and] demands compliance with agency deadlines and other critical procedural rules"). Thus, completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement. *See*

*Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001). Special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). A court may, however, dismiss a complaint for failure to state a claim where the allegations on the face of the complaint establish that it is subject to dismissal, even on the basis of an affirmative defense. *See Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement") (citing *Jones*, 549 U.S. at 215).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6. *See* Administrative Directive 9.6, Inmate Administrative Remedies (revised August 15, 2013), available at http://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf. The type of remedies available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in subsections (B) through (I) of Administrative Directive 9.6(4), the applicable remedy is the Inmate Grievance Procedure set forth in 9.6(6). Thus, claims related to use of excessive force or inmate safety are subject to the Inmate Grievance Procedure set forth in Administrative Directive 9.6(6).

Under the Inmate Grievance Procedures set forth in Administrative Directive 9.6(6), an

6

inmate must first attempt to resolve the matter informally. He or she may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See id.* at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt using a specific form and send that form to the appropriate staff member. *See id.* If an inmate does not receive a response to the written request within fifteen business days or the inmate is not satisfied with the response to his request, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I).

The inmate may appeal the disposition of the Level 1 grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. *See id.* at 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K). The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within 65 days from the date the Level 1 grievance was filed by the inmate. *See id.* at 9.6(M).

Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K). The District Administrator is required to respond to the Level 2 appeal within thirty business of receipt of the appeal. *See id.*

7

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or level 2 appeals to which there has been an untimely response by the District Administrator. *See id.* at 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner must be filed within 35 days of the filing of the Level 2 appeal. *See id.* at 9.6(6)(M). A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee. *See id.* at 9.6(6)(L).

Gulley states that he filed his Level 2 grievance on May 14, 2019. His complaint is dated May 28, 2019. Thus, he filed this action before the time for response to his Level 2 grievance expired. Further, if he does not receive a timely response, he is required to pursue a Level 3 appeal. On the present record, it appears that Gulley commenced this action before he fully exhausted his administrative remedies. Thus, his claims are subject to dismissal on that ground. Before dismissing the complaint, however, the Court will afford Gulley an opportunity to address the exhaustion requirement.

## CONCLUSION

Gulley is directed to file a response within twenty days from the date of this order addressing why the complaint should not be dismissed for failure to fully exhaust administrative remedies before commencing this action. Failure to provide sufficient reasons or failure to comply with this order will result in the dismissal of the complaint.

So ordered.

Dated at Bridgeport, Connecticut, this 25th day of June 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge